UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY | CIVIL ACTION NO. |
| VERSUS | JUDGE |
| MILLER HAY SALES, LLC AND DAVID MILLER | MAGISTRATE |

## COMPLAINT FOR DECLARATORY JUDGMENT

Complainant, Crum & Forster Specialty Insurance Company, respectfully submits this Complaint for Declaratory Judgment and shows as follows:

## I.
### PARTIES

1.     Complainant, Crum & Forster Specialty Insurance Company ("CFSIC"), is an insurer incorporated in Delaware and with its main administrative office in Morristown, New Jersey.

2.     Defendants to this declaratory judgment action are (a) Miller Hay Sales, LLC, which is a limited liability company formed, domiciled, and with its principal place of business in Texas, whose members on information and belief also are domiciled in Texas, and who as a company can be served through its registered agent, David Miller, 916 CR 2375, Alba, Texas 75410; and (b) David Miller, a person of the full age of majority, who is domiciled in Texas, and who can be served at 916 CR 2375, Alba, Texas 75410.

## II.
### JURISDICTION AND VENUE

3.     This Court has diversity jurisdiction over the parties under 28 U.S.C. § 1332, as

complete diversity exists between the Complainant and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     This Court also has jurisdiction over the issues in this lawsuit under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure. Through this action, CFSIC seeks a declaration and judgment that, under the Policy it issued to Miller Hay Sales, LLC, CFSIC has neither a duty to defend nor a duty to indemnify any party or individual with respect to the claims and damages brought by the Plaintiffs for the claims and damages being asserted, as detailed below.

5.     Pursuant to 28 U.S.C. § 1391, venue is proper in this District because the policy of insurance was issued and/or delivered to Miller Hay Sales, LLC within this District.

### III.
### THE CLAIMS

6.     A Petition was filed in the matter entitled *Blair Freeman, Mandy Freeman, and Freeman Cattle Company v. Miller Hay Sales, LLC and David Miller*, as Cause Number 2026-044, in the 402nd Judicial District Court of Wood County, Texas.  *See* Petition attached as Exhibit A.

7.     According to the Petition, the Plaintiffs, Blair Freeman, Mandy Freeman, and Freeman Cattle Company, own and operate a cattle and horse operation in Grayson, Texas, where they raise, train, and compete with rodeo horses.  In or around June 2024, the Plaintiffs purchased approximately eight tons of alfalfa cubes from the Defendants, Miller Hay Sales, LLC and David Miller, to use as feed for their horses.  *Id.* at ¶¶ 4.1-4.2.

8.     Allegedly, the Defendants represented that the alfalfa cubes were suitable, safe, and appropriate for use as horse feed.  *Id.* at ¶ 4.3. The Plaintiffs claim that they relied upon the Defendants' representations and expertise in the sale of animal feed products. *Id.* at ¶ 4.4.

2

However, unbeknownst to the Plaintiffs, the alfalfa cubes sold by the Defendants allegedly were contaminated with pyrrolizidine alkaloids ("PAs"), which are toxic compounds produced by certain invasive weeds, such as groundsel and ragwort.  *Id.* at ¶ 4.5. These toxic weeds were harvested along with the alfalfa and processed into the cubes, creating a toxic feed product that causes severe and often fatal liver damage in horses. *Id.* at ¶ 4.6.

9.      Beginning in or around November 2024, the Plaintiffs' horses allegedly began exhibiting severe symptoms of illness after consuming the contaminated alfalfa cubes purchased from the Defendants. *Id.* at ¶ 4.7. Then, in December 2024, multiple horses were hospitalized with life-threatening conditions.  *Id.* at ¶ 4.8.

10.      According to the Petition, diagnostic testing by the Michigan State University Veterinary Diagnostic Laboratory confirmed that the horses were suffering from PA toxicity caused by the contaminated alfalfa cubes. *Id.* at ¶ 4.9. As a direct and proximate result of consuming the contaminated alfalfa cubes sold by the Defendants, four of the Plaintiffs' horses died, and two additional horses suffered critical illness requiring extensive hospitalization and ongoing medical treatment. *Id.* at ¶ 4.10.

11.      In the Petition, the Plaintiffs allege that the horses that died were highly trained competitive rodeo horses with significant value based on their breeding, training, and competitive accomplishments. *Id.* at ¶ 4.13. The contaminated alfalfa cubes were defective, unsuitable for their intended purpose, and posed an unreasonable danger to horses that consumed them, the Plaintiffs maintain in the Petition.  *Id.* at ¶ 4.14.

12.      In summary, the Plaintiffs assert causes of action for breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, deceptive trade practices, negligence, and negligence per se in their Petition.  The Plaintiffs also

seek damages for the following:

    a.    The value of the four horses that died as a result of consuming the contaminated alfalfa cubes;

    b.    Veterinary expenses incurred in attempting to treat and save the horses, including hospitalization costs, diagnostic testing, medications, and ongoing treatment;

    c.    The diminished value of the two horses that survived but suffered permanent injury:

    d.    Loss of use and enjoyment of the horses;

    e.    Loss of future earnings and competition winnings that would have been earned by the horses;

    f.    Consequential expenses related to the care and treatment of the horses;

    g.    The cost of the contaminated alfalfa cubes;

    h.    Mental anguish suffered by the Plaintiffs as a result of witnessing the suffering and death of their horses; and

    i.    Other damages to be proven at trial.

*Id.* at ¶ 6.1.

## IV.
### THE POLICY

13.    Any claims and/or damages asserted by the Plaintiffs in the Petition are barred, excluded, and/or limited by the express terms, conditions, exclusions, forms, declarations, limits, business description, and/or endorsements of Commercial General Liability Policy Number BAS-29453-1 issued by Crum & Forster Specialty Insurance Company to Miller Hay Sales, LLC ("the Policy"), which are pleaded in their entirety as if copied here *in extenso.*

14.    CFSIC shows that coverage for the claims and damages asserted by the Plaintiffs is barred, excluded, and/or limited by one or more of the terms, conditions, exclusions, forms, declarations, limitations, definitions, and/or endorsements of the Policy, including, but not limited to, the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\*    \*    \*

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

   (1)   The amount we will pay for damages is limited as described in SECTION **III**—Limits Of Insurance; and

   (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages **A** and **B**.

   b.   This insurance applies to "bodily injury" and "property damage" only if:

   (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)   The "bodily injury" or "property damage" occurs during the policy period; and

   (3)   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II**—Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II**—Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or

5

"property damage" after the end of the policy period.

> **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II**—Who is An Insured or any "employee" authorize by you to give or receive notice of an "occurrence" or claim:
>
> > **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
> >
> > **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
> >
> > **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".
>
> \*        \*        \*

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\*        \*        \*

## SECTION V—DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*        \*        \*

**17.**     "Property damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs store as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

*        *        *

15.     CFSIC shows that the allegations, claims, or damages in the Petition do not constitute an "occurrence" as defined by the Policy.  Furthermore, the allegations, claims, or damages do not constitute an "occurrence," "bodily injury," or "property damage" to which the insurance applies in accordance with the terms of the Insuring Agreement above.

16.     CFSIC shows that coverage for the claims and damages asserted by the Plaintiffs is barred, excluded, and/or limited by one or more of the terms, conditions, exclusions, forms, declarations, limitations, and/or endorsements of the Policy, including, but not limited to, the following:

<strong>HAZARDOUS MATERIALS EXCLUSION</strong>

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.**     **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f.** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n.** and **m.** are replaced by the following:

This insurance does not apply to:

7

**Hazardous Materials**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

\*       \*       \*

**(3)** Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

**(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1), (2),** or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

**B.**    **SECTION V – DEFINITIONS** is amended and the following added:

**1.** "Hazardous materials" means "pollutants", lead, asbestos, silica, "PFAS" and materials containing them.

**2.** "PFAS" means and/or includes, but is not limited to:

**a.** Any chemical or substance that consists of one or more alkyl groups consisting of carbon (C) and hydrogen (H) atoms where the hydrogen (H) atoms have been replaced partially or in whole with fluorine (F) atoms, including but not limited to: Ammonium Perfuorooctanoate (APFO), Perfluorobutanoic acid (PFBA), Perfluorohexanoic acid (PFHxA), Perfluorheptanoic acid (PFHpA), Perfluorooctanoic acid (PFOA), Perfluorononanoic acid (PFNA), Perfluorodecanoic acid (PFDA), Perfluoroundecanoic acid (PFUnA), Perfluorododecanoic acid (PFDoDA), Perfluorobutane sulfonic acid (PFBS), Perfluorohexane sulfonic acid (PFHxS), Perfluorooctane sulfonic acid (PFOS), Perfluorooctane sulfonamide (FOSA), Perfluoroalkyl acid (PFAA), Perfluoropolyethers (PFPE), Fluorotelomer-based substances, or side-chain fluorinated polymers.

**b.** Any substance, product, material or compound that is or contains perfluoroalkyl and polyfluoroalkyl substances, including but not limited to the items described in **a.** above.

**c.** Any substance, material, or compound that is identified or acknowledged by any local, federal, state, international or other governmental agency or authority, including but not limited to the United States Environmental Protection Agency (EPA), the Centers for Disease Control and Prevention (CDC), the Agency for Toxic Substances and Disease Registry (ATSDR), the National

8

Institute for Health (NIH), or the International Agency for Research on Cancer (IARC) to:

**(1)** Contain perfluoroalkyl and polyfluoroalkyl substances; or

**(2)** Exhibit or demonstrate the same or similar harmful characteristics as perfluoroalkyl and polyfluoroalkyl substances.

**d.** Any constituents, additives, degradation, breakdown, or by-products to or of any substance, material or compound set forth in Paragraphs **a.**, **b.** or **c.** above, including but not limited to polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, esters, alcohols, acids, and any precursor chemicals, compounds or derivatives.

\*      \*      \*

In turn, the Policy defines "pollutants" as follows:

**SECTION V – DEFINITIONS**

\*      \*      \*

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\*      \*      \*

17. The Plaintiffs allege that the alfalfa cubes sold by the Defendants were contaminated with pyrrolizidine alkaloids ("PAs"), which are toxic compounds produced by certain invasive weeds. These toxic weeds allegedly were harvested along with the alfalfa and processed into the cubes, creating a toxic feed product that caused severe and often fatal liver damage in horses, including the horses in this case.  There is no coverage under the Policy for any claims or damages that would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of the "hazardous materials" in this case.  Consequently, coverage is excluded for any claims and damages in the Petition under the terms of the Hazardous Materials Exclusion above.

**V.**

**REQUEST FOR DECLARATORY RELIEF**

18. The claims and damages asserted by the Plaintiffs in their Petition are excluded

under the Policy by the terms, conditions, endorsements, and exclusions cited above, among other provisions of the Policy.

19.    For these reasons, CFSIC does not owe a duty to defend, or a duty to indemnify, Miller Hay Sales, LLC, David Miller, or any other person, company, entity, or party, for the claims and damages asserted by the Plaintiffs.

WHEREFORE, the Complainant, Crum & Forster Specialty Insurance Company, prays that there be judgment in favor of Complainant and against the Defendants, Miller Hay Sales, LLC and David Miller, declaring that there is no coverage under the Policy issued by Crum & Forster Specialty Insurance Company to Miller Hay Sales, LLC, David Miller, or any other person or entity for the claims and damages asserted by the Plaintiffs such that Crum & Forster Specialty Insurance Company has no duty to defend or duty or obligation to indemnify Miller Hay Sales, LLC, David Miller, or any other person, company, entity, or party; for all costs and expenses allowed by law; and for all general and equitable relief that this Honorable Court deems fit.

Respectfully submitted,

*/s/ Timothy W. Hassinger*

TIMOTHY W. HASSINGER (Bar No. 24081552
thassinger@gallowaylawfirm.com
M. SHAYAN BAIG (Bar No. 24127883)
SBaig@gallowaylawfirm.com
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
1301 McKinney St., Suite 1400
Houston, Texas 77010
Telephone: (713) 599-0700
Facsimile:  (713) 599-0777
**COUNSEL FOR**
**CRUM & FORSTER SPECIALTY INSURANCE COMPANY**